Francis R. DIETRICH et al.,
Appellants,

v.

Donnell B. DIETRICH et al.,
Respondents.

No. 34725.

Missouri Court of Appeals,
St. Louis District,
Division One.

June 19, 1973.

Motion for Rehearing or Transfer Denied
Aug. 16, 1973.

**612**

Thurman, Nixon, Smith, Howald, Weber & Bowles, Hillsboro, for appellants.

Dearing, Richeson, Roberts & Wegmann, Hillsboro, for respondents.

CLEMENS, Judge.

Suit by devisees to retrieve gifts previously made from testator's funds, allegedly without his authority.

Frank Dietrich, a 91-year-old retired lawyer and banker, liquidated his holdings for over $350,000 two years before he died in 1970. The impending impact of estate taxes was softened by three annual per capita gifts of $3,000 to each of Frank Dietrich's three children, six grandchildren and their spouses and his ten great-grandchildren. Payments were made by checks drawn on Frank Dietrich's bank account signed by his son, Defendant Donnell Dietrich. The family of plaintiff-son Francis Dietrich received $48,000 of these gifts; plaintiff daughter Elizabeth had only one child and her branch of the family received $18,000; the family of defendant Donnell Dietrich was more numerous and they received $111,000. These gifts were made at the rate of $3,000 a year to Frank Dietrich's relatives.

By Frank Dietrich's will, executed early in 1968, he had bequeathed his estate in nine equal shares to his own three children, to the three children of son Francis, to the one child of daughter Elizabeth and the two children of son Donnell. Obviously the numerous $3,000 per capita gifts were more favorable to Donnell Dietrich's family ($111,000) than to Francis' ($48,000) and Elizabeth's ($18,000). Therein lay the seeds of this lawsuit. Plaintiffs seek to recover $123,500, that sum to be added to the Frank Dietrich estate and then distributed in nine equal shares according to his will.

The key issue here is whether Frank Dietrich authorized his son Donnell to make the numerous per capita gifts to Frank Donnell's progeny. Plaintiffs say no, pleading that Frank Dietrich was old, weak of body and mind and subjected to undue influence by defendants.

In rendering judgment for defendants the trial court found: "1. During the period of the disbursements in question (generally being on September 18, 1968; January 4, 1969; and January 2, 1970) Mr. Frank Dietrich was mentally alert; aware of the objects of his bounty and the members of his family; and aware of the extent of his assets. 2. The distribution of Mr. Frank Dietrich's money, both as to amounts and recipients, was made in accordance with Frank Dietrich's specific directions, in accordance with his wishes and he was fully aware of the distributions. 3. Plaintiffs knew or should have known for at least a year prior to Frank Dietrich's death of the gifts being made, and the recipients of the gifts but never discussed the matter with Frank Dietrich; or if they discussed the matter with Frank Dietrich learned that the making of the gifts was directed by him."

Frank Dietrich broke his hip early in 1968. After hospitalization he went back to DeSoto to live at a boarding home run by Mrs. Reva Wood. He had to use a walker but got around the neighborhood

and went for automobile rides. Friends and relatives were frequent visitors.

The sum of testimony by plaintiff-daughter, her husband and four plaintiff-grandchildren was that during Frank Dietrich's last two years (1968–1970) he was disoriented, did not talk to a granddaughter who visited him, talked about the past and called visitors by the wrong names. From this premise plaintiffs argue by inference that Frank Dietrich was unaware Donnell Dietrich was making the numerous gifts.

Defendant's evidence on Mr. Dietrich's mental capacity in 1968–1970 contrasted starkly with plaintiffs'. Mr. Dietrich's treating physician had known him as a patient and business associate for years. His lawyer had consulted with him annually on income tax problems. A Jefferson County official had known Mr. Dietrich for 20 years, had regularly commuted with him from DeSoto to Hillsboro and later visited him in Wood's boarding home. Mr. and Mrs. Wood were on cordial terms with Mr. Dietrich and shared their living room with him. In sum, these witnesses testified Mr. Dietrich was a man of firm convictions; was alert and aware of his assets; interested in local politics and banking and avidly interested in baseball. This condition lasted until a short time before his death February 8, 1970.

■ We find, as did the trial court in its Finding No. 1, supra, that during the time of the transactions in issue, Frank Dietrich was of sound mind, aware of his assets and the objects of his bounty. Having reached that conclusion on Mr. Dietrich's mental capacity we consider the circumstances leading up to the 1968–1970 payments.

Attorney Dwight Schubel had prepared Mr. Dietrich's income taxes for several years. Soon after Mr. Dietrich's return from the hospital to DeSoto in May of 1968 Mr. Schubel prepared the Dietrich will. Thereby Mr. Dietrich devised his estate to his three children and six grandchildren, per capita. Mr. Schubel testified he and Mr. Dietrich discussed the forthcoming sale of Mr. Dietrich's bank stock. "And at the time the will was made I recall telling him that he could minimize his Federal Estate Taxes by making gifts and that he could give $3,000 in a single year to any number of individuals without tax."

By September of 1968 the bank stock had been sold for $350,000, the money being deposited in certificates of deposit and Frank Dietrich's checking accounts with defendant banks. A checking account signature card was amended to authorize defendant-son Donnell Dietrich to draw on the account. With the help of Donnell Dietrich and his son Fred Dietrich, Frank Dietrich then executed this instrument: "POWER OF ATTORNEY . . . KNOW ALL MEN BY THESE PRESENTS, I, Frank Dietrich, DeSoto, Missouri, do hereby make and appoint my son, Donnell B. Dietrich, DeSoto, Missouri, my attorney in fact in my name and on my behalf to care for my affairs including endorsing and cashing checks, and other causes that may arise, such as make deeds, notes and mortgages, pay taxes and other bills. /s/ Frank Dietrich, Signature of Maker." Copies of the Power of Attorney were given to each of the defendant banks.

Plaintiffs contend the expenditures in favor of Frank Dietrich's relatives from his bank account were not authorized by the power of attorney. Conceding this, arguendo, defendants contend giving the power of attorney did not preclude Frank Dietrich from granting further and different authority to Donnell Dietrich and that by words and conduct Frank Dietrich did authorize the challenged expenditures. We agree. George F. Robertson Plastering Co. v. Magidson, 271 S.W.2d 538 [2–3] (Mo.1954).

By checks drawn on his father's account defendant Donnell Dietrich began distributing funds in accordance with the tax reduction plan, sending each of the Dietrich

relatives a $3,000 check, making adjustments for two $500 and one $1,000 gifts Mr. Dietrich had previously made. Several relatives thanked Mr. Dietrich for the gifts and all accepted them. Similar distributions were made in January 1969 and January 1970. On these two occasions Mr. Dietrich told Mr. Wood at the boarding home he had "just made another distribution."

■ Over plaintiffs' objection based on the Dead Man's Statute (§ 491.010 RSMo. 1969, V.A.M.S.), Donnell Dietrich was allowed to testify that Frank Dietrich instructed him in 1968, 1969 and 1970 to write the checks, specifically as to recipients and amounts, and that he did as directed. We have concluded it is unnecessary to rule on plaintiffs' challenge to the admission of Donnell Dietrich's testimony. The testimony of attorney Schubel shows Mr. Dietrich was aware of the tax advantages of making the $3,000 gifts. That several relatives thanked Mr. Dietrich showed he knew the gifts were being made, as did his announcements to Mr. Wood that he had made "another distribution." All this occurred while Mr. Dietrich was of sound mind and in keeping with a rational plan to avoid gift taxes and minimize estate taxes. We find Donnell Dietrich made the payments with his father's knowledge and approval. The trial court's finding No. 2, supra, as to Donnell Dietrich's authority is not clearly erroneous and we adopt it as our own.

In their brief plaintiffs level numerous attacks upon the judgment; we have considered each of them. They are premised on plaintiffs' claim that Frank Dietrich lacked mental capacity and their claim Donnell Dietrich lacked authority from his father to make the questioned payments. Considered in the light of our contrary findings these other points must fail.

Judgment affirmed.

DOWD, C. J., and McMILLIAN, J., concur.